UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>REGINALD BAUGHAM )<br>)<br>Defendant. )<br>) | Criminal No. 01-253-02 (RCL) |

**FILED**

APR 24 2013

Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

Now before the Court is petitioner Reginald Baugham's *pro se* Motion [646] to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Upon consideration of petitioner's *pro se* Motion [646], the Government's Opposition [658], the entire record herein, the applicable law, and for the reasons set forth below, petitioner's motion will be denied.

### I. BACKGROUND

Petitioner Reginald Baugham ("Baugham" or "Petitioner") was a prominent player in a drug conspiracy located near the intersection of 60th and Blaine Streets, Northeast, from approximately 1992 through May of 2000. Pre-Sentence Investigation Report ("PSR") ¶ 8.[1] The Metropolitan Police Department conducted an investigation of the outfit, which it deemed the "Marco Polo Crack Distribution Ring."[2] *Id.* at ¶ 7. Aspects of the investigation included drug seizures, surveillance activities, use of cooperating witnesses, and undercover police activity. *Id.* MPD ultimately arrested sixteen people in connection with its investigation. *Id.*

Baugham's alleged role in the conspiracy at trial was as a "major supplier of crack

---

[1] Petitioner objects to several aspects of the PSR, disputing all information contained in ¶¶ 7–14 and claiming he was not a leader or organizer of the conspiracy. Addendum to PSR 28.

[2] The alleged leader of the distribution ring, Marco Polo Honesty, Jr., was acquitted of all charges in this case. PSR ¶ 8 n.4.

cocaine to other dealers," who then distributed it throughout the area in which the enterprise operated. *Id.* Baugham sold crack on a daily basis, and began acting as a wholesale supplier to others sometime in 1997, ultimately supplying at least five other drug distributers. *Id.* at ¶ 9. Baugham often worked closely with Michael Wells, his half-brother, to buy and sell larger quantities of crack. *Id.* at ¶ 10.

By a twenty-four count indictment returned by the grand jury against sixteen defendants, petitioner was charged with: (1) conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846; (2) unlawful distribution of cocaine base, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; (3) unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (4) using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and (5) possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2. Gov't Opp'n 2, ECF No. 658.

After denying petitioner's motion to sever, Order, ECF No. 269, the Court tried Baugham along with four codefendants. Petitioner's defense at trial amounted to admitting to selling drugs but denying his membership in the conspiracy. Gov't Opp'n 18. Among the evidence presented at trial was a surveillance videotape showing Baugham giving a plastic bag to Darrell Young, which was found to contain 2.7 grams of crack, PSR ¶ 17; various informants who testified to obtaining crack from Baugham on a regular basis throughout the course of the conspiracy, *id.* at ¶¶ 22–24, 27; and a witness called by Baugham, Paula Spriggs, who testified to buying an amount of crack from Baugham that amounts to approximately 2.2 kilograms over twelve years, *id.* at ¶ 30.

On July 28, 2003, a jury convicted petitioner of the conspiracy and distribution charges; the jury acquitted him of the firearm charges. *Id.* at 3. The court found that petitioner's Guidelines' level was 43 and sentenced petitioner to a term of life on the conspiracy charge as mandated by the Sentencing Guidelines ("Guidelines"), concurrent terms of 360 months on the distribution and possession charges, and ten years of supervised release. *Id.* Baugham appealed.

On appeal, Baugham argued, *inter alia*, that the evidence at trial was insufficient to support his various convictions and that there was a "fatal variance between the conspiracy alleged and the proof at trial." *United States v. Baugham*, 449 F.3d 167, 170 (D.C. Cir. 2006). The D.C. Circuit affirmed petitioner's convictions but remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory and was decided after the defendant's sentencing. *Baugham*, 449 F.3d at 183. On December 14, 2007, the Court resentenced petitioner to three concurrent 240-month terms of imprisonment, three concurrent terms of ten years of supervised release, and a $1,000 fine. Gov't Opp'n 4.

Baugham again appealed, and the D.C. Circuit affirmed his sentences. *United States v. Baugham*, 613 F.3d 291, 293 (D.C. Cir. 2010) (per curium). Both Baugham's petition for rehearing en banc, and his petition for certiorari to the Supreme Court, were denied. *Baugham v. United States*, 131 S. Ct. 1510 (2011).

On February 17, 2012, Baugham filed this timely *pro se* motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. Mot. Set Aside 2, ECF No. 646. Specifically, petitioner requests an evidentiary hearing, arguing that his Sixth Amendment right to counsel was violated because his attorney (1) failed to interview Paula Spriggs, a defense witness, before presenting her testimony at trial, *id.* at 2–4, (2) failed to challenge the admissibility of co-

3

defendant Marco Polo Honesty's statements, *id.* at 4, and (3) failed to investigate an allegation that a government witness had been improperly coached during trial, *id.* at 4–5. The government opposes petitioner's motion on substantive grounds. *See generally* Gov't Opp'n

## II. DISCUSSION

Section 2255 permits federal prisoners to collaterally attack an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The burden of proof is on the petitioner to demonstrate his right to relief under § 2255 by a preponderance of the evidence. *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012). The petitioner must "clear a significantly higher hurdle" when seeking collateral relief than he would on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Indeed, claims not raised on direct appeal are generally barred outright "unless the defendant shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Ineffective assistance of counsel claims fall outside the bounds of this rule, however, as they may be raised in collateral proceedings under § 2255. *Id.* Still, a district court may deny a § 2255 motion without an evidentiary hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). Baugham's motion does not require a hearing because the record conclusively shows that he is not entitled to relief.

To prevail on a claim of ineffective assistance of counsel, petitioner "must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Specifically, petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of

reasonableness under prevailing professional norms" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). This sets a high bar, as a court's evaluation of counsel's actions "must be highly deferential," and is assessed under the circumstances present at the time of representation without the benefit of hindsight. *Id.* at 689. Furthermore, a "reasonable probability" under *Strickland's* second prong is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To find prejudice, the petitioner must show that is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011) (quotations and internal modifications omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong. *Strickland,* 466 U.S. at 700.

Baugham's claims that his counsel rendered ineffective assistance fail because he has not adequately demonstrated that his counsel's actions fell below an objective standard of reasonableness and that, but for counsel's alleged errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687–88. Each of petitioner's ineffective assistance of counsel claims stem from the trial portion of his case. The Court will address each of these claims in turn.

### A.   Alleged Failure to Interview Key Defense Witness

First, Baugham argues that his trial counsel failed to interview a key defense witness, Paula Spriggs, prior to presenting her testimony to the jury. Mot. Set Aside 2-4. Petitioner explains that Spriggs's testimony was meant "to show that Baugham was not involved in a conspiracy with other co-defendants, but distributing narcotics solely and separately from his co-defendants." *Id.* at 2. That was his trial strategy. When on the stand, however, Spriggs "grossly

5

misstated the drug quantity she purchased from Baugham, which in turn placed Baugham in a much higher base offense level." *Id.* at 2–3. Indeed, Baugham's attorney noted to the judge at sentencing that Spriggs may have "exaggerated" the quantity of drugs she testified to buying from Baugham. 12/18/03 Tr. at 8–9.

The government responds that the petitioner failed to demonstrate prejudice because other witnesses, notably Earl Nelson, testified to buying the requisite amount of drugs from Baugham to trigger a mandatory minimum and higher base offense level, rendering Spriggs's testimony unnecessary to reach that conclusion. Gov't Opp'n 22. The government also argues that counsel's decision to call Spriggs was not deficient according to *Strickland*'s first prong.[3] *Id.* at 23.

Even if the Court assumes the veracity of petitioner's claim, namely that his trial counsel failed to interview and prepare Spriggs prior to presenting her testimony, the petitioner has not shown that such failure resulted in prejudice such that a different result could have been reached at trial. *See Strickland,* 466 U.S. at 687–88. Given that other witnesses testified to purchasing crack from Baugham (most notably Earl Nelson, who testified to buying approximately twenty-eight grams "more than twenty or thirty times," *see* Gov't Opp'n 22 (citing *United States v. Baugham,* 449 F.3d at 171-72)),[4] Spriggs's testimony was not necessary to the conclusion that Baugham sold over fifty grams of crack over the course of the conspiracy. *See United States v.*

---

[3] The government's argument here mischaracterizes the petitioner's motion. The government frames Mr. Baugham's argument as a request for "this Court to re-evaluate his counsel's decision to call Ms. Spriggs" and then contends that such a decision cannot be questioned because it relates to defense counsel's trial strategy. Gov't Opp'n 23 (citing *Strickland,* 466 U.S. at 689). However, Mr. Baugham does not question his counsel's decision to *call* Ms. Spriggs, but challenges his counsel's failure to *prepare* her prior to presenting her testimony to the jury. Mot. Set Aside 2–4. Surely the failure to prepare and control a defense witness should not be characterized as counsel's strategic choice and indeed warrants judicial consideration with regard to *Strickland*'s deficiency prong.

[4] The Court would like to note the government's miscalculation of the amount of crack cocaine Earl Nelson testified to purchasing from Baugham: twenty-eight grams purchased on twenty to thirty different occasions amounts to 560 to 840 grams, not 5.6 kilograms. The government should make an effort to avoid such gross misstatements in the future.

6

*Toms*, 396 F.3d 427, 434–35 (D.C. Cir. 2005) (finding testimony of two witnesses who would have offered evidence only on issues not in doubt due to other evidence unnecessary and thus not violative of *Strickland*'s prejudice prong); *United States v. Mitchell*, 216 F.3d 1126, 1130–31 (D.C. Cir. 2000) (finding failure of defense counsel to interview potential witness who would have partially contradicted a government witness's testimony did not meet *Strickland*'s prejudice prong because the uninterviewed witness's testimony would have been cumulative). As such, even a complete failure on the part of Baugham's counsel to interview Spriggs before putting her on the witness stand would not have led to a different result at trial, and thus did not prejudice the petitioner under *Strickland*.[5]

### B. Failure to Challenge the Admissibility of a Co-Defendant's Statements

Baugham's second ineffective assistance claim alleges that his counsel failed to challenge the admissibility of an affidavit given by Baugham's co-defendant, Marco Polo Honesty. Mot. Set Aside 4. Although petitioner claims that his counsel "never objected to Honesty's affidavit and hence was ineffective," *id.*, the government lists four motions in which petitioner's trial counsel explicitly challenged the admissibility of Baugham's co-defendants' statements and sought severance on his client's behalf.[6] Gov't Opp'n 24–25.

Because the record clearly demonstrates that Baugham's counsel attempted to exclude statements made by Honesty by filing four different motions that were subsequently denied, counsel's performance cannot be deemed to have fallen "below an objective standard of reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88. Thus, Baugham's ineffective assistance of counsel claim fails *Strickland*'s deficiency prong.

---

[5] The Court need not analyze *Strickland*'s deficiency prong with respect to Spriggs's testimony because petitioner cannot demonstrate the requisite prejudice prong.

[6] ECF Nos. 120, 121, 122, 124.

### C. Failure to Argue a Witness Had Been Coached by Police

Petitioner's third claim alleging ineffective assistance is that his counsel failed to investigate and argue that a government witness, Earl Nelson, had been improperly coached during trial. Mot. Set Aside 4–5. This claim is unsubstantiated. In fact, both parties agree that Baugham's counsel brought the issue to the court's attention and moved for a mistrial based on the alleged conversation. Mot. Set Aside 5; Gov't Opp'n 25–26. The court then heard from two witnesses to the alleged incident, satisfied itself that no further action was necessary, and ultimately denied the motion for a mistrial. Gov't Opp'n 26.

The petitioner speculates that further investigation, after the judge decided the issue, would have led to a confirmation that police did in fact coach Nelson, which would then have led to the exclusion of Nelson's testimony, which in turn would have changed the outcome of the trial. However, the D.C. Circuit has held that denial of a §2255 motion is fitting when an ineffective assistance claim is purely speculative. *United States v. Morrison*, 98 F.3d 619, 626 (D.C. Cir. 1996). Specifically, "a court cannot engage in vague speculations about the kind of investigation defense counsel might have made in addition to the prodigious efforts established by the record." *Id.* (quoting *United States v. Parman*, 461 F.2d 1203, 1205 (D.C.Cir.1971)). The record indeed establishes the efforts made by Baugham's counsel with regard to this allegation, and the Court is satisfied that counsel's actions thus did not fall below the acceptable standard set out in *Strickland*.

### III. CERTIFICATE OF APPEALABILITY

Before pursuing an appeal from a final order in a §2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). When the denial of a § 2255 motion is based on the merits of the claims in the motion, a district court should issue a

certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner is required to show that reasonable jurists could debate whether the issues should have been resolved differently or are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2)); *see also Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009). Furthermore, the Supreme Court has stated:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [Certificate of Appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484. Such a showing can be made when precedent clearly demonstrates that courts have come to divergent conclusions based on analogous facts. Because Baugham has not made a substantial showing of the denial of a constitutional right, and because the Court finds that reasonable jurists would not debate the denial of petitioner's motion, the Court declines to issue a certificate of appealability.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on April 23, 2013.